AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Samsung Cellular Telephone Mode: SM-S727VL(GP),<br>IMEI: 354727082170275, FCCID: A3LSMS727VL | ) ) ) ) ) Case No. 2:20sw 144 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Samsung Cellular Telephone Mode: SM-S727VL(GP), IMEI: 354727082170275, FCCID: A3LSMS727VL, currently located at the Norfolk FBI Field Office Evidence Control Room located at 509 Resource Row, Chesapeake, Virginia.

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(g) | Felon in Possession of a Firearm |
| 18 USC § 1951 | Interference with Commerce by Robbery |

The application is based on these facts:
See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA

*/s/ Sherrie Capotosto, AUSA*
*Printed name and title*

*Phillip B. Gautny*
Applicant's signature

Phillip B. Gautney, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means).*

Date: 06/01/2020 6·30·2020

UNITED STATES MAGISTRATE JUDGE

City and state: Norfolk, VA

Robert Krask, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
### Evidence to be Seized

1. All records, contained in:

   **Device 1:** LG cellular telephone, Model: LGL62VL, FCCID: ZNFL62VL HEX: 354792079288424

   **Device 2:** Samsung cellular telephone, Model: SM-S727VL(GP), IMEI: 354727082170275, FCCID: A3LSMS727VL

   **Device 3:** Samsung cellular telephone, Model: SM-G530T, FCC ID: A3LSMG530T, IMEI: 357118/07/021160/1

that relate to violations of 18. U.S.C. § 922(g), Felon in Possession of a Firearm, and 18 U.S.C. § 1951, Interference with Commerce by Robbery, including:

   (a) Any address books, phone books, names and lists of names, addresses, phone numbers;

   (b) Any call logs created by the phone;

   (c) Any record of text messages;

   (d) Any electronic data to include, digital photographs, videos, or audio recordings;

   (e) Any subscriber or owner information;

   (f) Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones; and

   (g) Any geo-location meta data associated with photographs and video images.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Phillip B. Gautney, being first duly sworn, state:

### I. Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant authorizing the examination of electronic devices which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since February 2010. I am currently assigned to the Violent Crime Squad in the Norfolk FBI Field Office in Chesapeake, Virginia. I have been the principal investigator in federal investigations involving robberies, public corruption, kidnappings, child pornography, narcotics trafficking and violent gang/criminal enterprise organizations. The violent gang/criminal enterprise investigations have focused in part on drug trafficking involving the unlawful transportation and distribution of controlled substances, violent acts that are used by gang members and Drug Trafficking Organizations (DTO) to intimidate, control and facilitate schemes where the gang/DTO obtains money and territory. Also, I have been the lead case agent and participated in investigating numerous multi-jurisdictional Hobbs Acts robbery cases throughout the Tidewater area. Through experience and training, I have become familiar with the methods and schemes employed by gang members to obtain and distribute controlled substances. I am also familiar with, and have utilized, a wide variety of investigative techniques, including but not limited to the development of cooperating sources, Title III wiretaps, source debriefings, physical surveillance, trash pulls, controlled purchases, telephone toll record analysis, pen registers, administrative and grand jury subpoenas, search warrants and electronic surveillance. As a result of my training and experience as a Special Agent for the FBI, I am familiar with federal laws. Your affiant has conducted and has assisted in investigations into the unlawful possession,

possession with intent to distribute, and distribution of controlled substances, and associated conspiracies, in violation of Title 21, United States Code, Sections 841 and 846.

3. As a federal agent, I am authorized to investigate violations of federal law and to execute warrants issued under the authority of the United States.

4. The statements in this affidavit are based in part on my investigation of this matter and on information provided by other law enforcement agents. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

## II. Identification of the Items to be Examined

5. On October 20, 2017 during the execution of a lawfully authorized state search warrant at CRAIG LEON PULLEY's residence, an apartment in the 800 block of Johnson Avenue, Norfolk, Virginia, law enforcement seized three cellular phones. The property to be searched includes the following three previously seized devices:

| | |
|---|---|
| Device 1: | LG cellular telephone, Model: LGL62VL, FCCID: ZNFL62VL HEX: 354792079288424; |
| Device 2: | Samsung cellular telephone, Model: SM-S727VL(GP), IMEI: 354727082170275, FCCID: A3LSMS727VL; and |
| Device 3: | Samsung cellular telephone, Model: SM-G530T, FCC ID: A3LSMG530T, IMEI: 357118/07/021160/1. |

These cell phones are currently located at the Norfolk FBI Field Office Evidence Control Room located at 509 Resource Row, Chesapeake, Virginia. The applied-for warrant would authorize the forensic examination of the Subject Items in order to identify the electronically stored data described in Attachment A.

## III. Pertinent Federal Criminal Statutes

6. This warrant is sought in support of an investigation into the following criminal

offenses:

    a.    Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g); and

    b.    Interference with Commerce by Robbery in violation of Title 18, United States Code, Section 1951.

## IV. Definitions

7. A cellular telephone, or cell phone, is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

8. "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

9. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

## V. Specifics of Search and Seizure of Electronic Devices

10. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

11. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Items were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Items because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence;

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when;

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant;

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium;

4

    f.    I know that when an individual uses an electronic device to facilitate narcotics trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, and other records that indicate the nature of the offense.

12. *Nature of examination.* The warrant I am applying for would permit the examination of the Subject Items consistent with the warrant and the provisions of Fed. R. Crim. P. 41(e)(2)(B). The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

13. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. Factual Background

14. I have become aware of the facts and circumstances described below through my personal observation, my training and experience, and information provided by other law enforcement officers. The information provided in this affidavit is for the limited purpose of establishing probable cause and does not contain all of the details or facts of which I am aware relating to this case.

15. On April 12, 2016, an armed robbery occurred at Bayview Pharmacy, 710 East Little Creek Road in Norfolk wherein the robber, who was wearing a black mask, gloves and other dark clothing, brandished a firearm and demanded money and narcotics from the victim, one of two employees. Many of the stolen pills were in "pharmacy fill bottles," which contain a large

5

number of pills and are used for filling individual prescriptions for ultimate users. Pharmacy fill bottles are only available to hospitals and commercial pharmacies and are not available to the general public. The robber made the victims lie on the ground, and placed everything in a white trash bag before fleeing.

16. On October 22, 2016, an armed robbery occurred at the same Bayview Pharmacy on East Little Creek Road. On this occasion the robber jumped the counter, brandished a machete and demanded money and "all the meds" indicating the Schedule II drugs that are kept in a safe. Many of the stolen pills were in pharmacy fill bottles. The robber placed money from the till and all the medications into two white large trash bags before fleeing on foot. The victim, who was the same employee who was robbed on April 12, 2016, told police that the robber "was the same guy as before," despite his black mask and clothing. Later, a reliable confidential human source (CHS-1) told members of the Investigative Team that in October/November of 2016, Darryl BLUNT provided CHS-1 with a large quantity of prescription pills, some in pharmacy fill bottles. BLUNT referred to the large quantity of pills as "my cut." CHS-1 also stated that BLUNT's "cousin" was present at the time, clutching a large white trash bag full of prescription pills (some in pharmacy bottles) and acting nervous.

17. CHS-1 described BLUNT's cousin as an individual who had recently been charged with murder. CHS-1 later identified BLUNT's cousin as Craig PULLEY. CHS-1 sold the prescription pills and later paid BLUNT an agreed-upon price for each type. CHS-1 also said that BLUNT encouraged CHS-1 to participate in robbing another pharmacy, but CHS-1 declined.

18. On July 29, 2017, an armed robbery occurred at Bayview Neighborhood Pharmacy, 1846 East Little Creek Road in Norfolk, Virginia wherein the robber, who was wearing a black mask, gloves and other dark clothing, brandished a firearm and demanded money and

prescription drugs from the victim-employee. During the robbery, the victim noticed that the robber appeared to be talking on his phone and made several statements such as, "Yeah, we're good in here," and after the robbery was over he said he was "on the way out." The robber placed over eleven thousand dosage units of controlled substances, including oxycodone, hydrocodone, amphetamine, methylphenidate, hydromorphone, codeine, morphine, methadone, and Vyvanse, many of which were in pharmacy fill bottles, into two large white trash bags before fleeing on foot. Telephone toll records showed an incoming call from PULLEY's phone to BLUNT's phone during the robbery at approximately the same time the victim described the incoming call he overheard. In addition, cell tower data showed BLUNT's and PULLEY's cellular telephones were utilized by tower(s) at or near the robbery location at the time of the robbery.

19. On October 12, 2017, an armed robbery occurred at the Peoples' Pharmacy and Diabetic Clinic, 1446 Church Street, in Norfolk, wherein two robbers, wearing black masks and gloves, brandished firearms and demanded money and prescription drugs from the victim-employees, one of whom was eight months pregnant and was thrown to the floor by the assailants. During the robbery over five thousand dosage units of controlled substances were taken, including oxycodone, hydrocodone, dextroamphetamine/amphetamine, methylphenidate, codeine, morphine, alprazolam, and buspirone, many of which were in pharmacy fill bottles. Cell tower data showed BLUNT's and PULLEY's cellular telephones were utilized by tower(s) at or near the robbery location at the time of the robbery.

20. CHS-1 told the Investigative Team that in or about June/July of 2017, BLUNT provided CHS-1 with another shoebox full of prescription pills including Oxycodone and

Dilaudid to distribute. BLUNT again encouraged CHS-1 to "get in on the deal," and said that he had a couple of pharmacies in mind. CHS-1 declined.

21. On October 13, 2017, a search warrant was executed at BLUNT's residence in the 1100 block of Holt Street, in Norfolk. Detectives recovered from the residence, among other things, pharmaceutical narcotics and pharmacy fill bottles with National Drug Code (NDC) numbers consistent with those stolen from both the July 29, 2017 and October 12, 2017 pharmacy robberies, two boxes of .380 ammunition, and a magazine loaded with .380 ammunition.

22. A search warrant was also executed on BLUNT's vehicle, which yielded, among other things, a dark grey sweatshirt with red lettering on the front that is very similar to the one visible in the surveillance video of the People's Pharmacy robbery, a black knit mask with two eyeholes and a mouth hole cut into it, and a pharmacy fill bottle consistent with one stolen from the People's Pharmacy a day earlier. BLUNT was taken into custody and managed to surreptitiously conceal a loaded Ruger .380 caliber pistol on his person, smuggle it into a police department holding cell, and discard it behind the sink/toilet where it was discovered by another inmate several days later.

23. On October 19, 2017, members of the Investigative Team served a state search warrant at a small warehouse in the 7400 block of Sewells Point Road in Norfolk, the clubhouse of a motorcycle club where BLUNT was a member, and recovered a black ball cap with a blue brim and red insignia on the front as well as a bright colored safety vest both of which were visible in the People's pharmacy surveillance video. In addition, members of the Investigative Team recovered a Taurus 9mm pistol and a pair of gloves from underneath a pile of leaves in the yard of an abandoned house next door to PULLEY's mother's residence in Norfolk.

24. On October 20, 2017, a search warrant was executed at PULLEY's residence in the 800 block of Johnson Avenue in Norfolk. PULLEY was detained as he walked out of the apartment and was transported to the Norfolk POC. During the search of PULLEY's residence, the Investigative Team recovered, among other things, Device 1, Device 2, Device 3, 797 pills to include oxycodone, hydrocodone, and a fill bottle with NDC numbers consistent with those stolen from both the July 29, 2017 pharmacy robbery and the October 12, 2017 pharmacy robbery.

25. Numerous items of evidence from these cases have been swabbed for DNA and submitted to the Division of Forensic Science for testing. The following results have been returned:

(1) The dark grey sweatshirt recovered from BLUNT's vehicle contained DNA consistent with PULLEY;

(2) The magazine for the Ruger .380 pistol recovered from inside the holding cell contained DNA consistent with BLUNT;

(3) The baseball hat recovered from the motorcycle club contained DNA consistent with both BLUNT and PULLEY;

(4) The black knit mask recovered from BLUNT's vehicle contained DNA consistent with PULLEY; and

(5) The Taurus 9mm contained insufficient DNA to conduct analysis.

26. At the time the search warrants were conducted, BLUNT had been previously convicted of the following felonies:

(1) Robbery – September 1998
(2) Grand Larceny – September 1998
(3) Grand Larceny – January 2001
(4) Robbery / Use of a Firearm / Conspiracy – August 2002

BLUNT subsequently pled guilty in United States District Court for the Eastern District of Virginia to Possession with Intent to Distribute Schedule II narcotics and Possession of a Firearm

9

by a Convicted Felon, and on October 2, 2018 and was sentenced on January 3, 2019 to 60 months in prison.

27. At the time the above referenced search warrants were executed and items were recovered, PULLEY had been previously convicted of the following felonies:

(1) Grand Larceny – October 1997
(2) Felon in Possession of a Firearm – February 2001
(3) Attempted Robbery – January 2002
(4) Probation Violation – December 2007
(5) Probation Violation – June 2010

PULLEY subsequently pled guilty in United States District Court for the Eastern District of Virginia to Possession with Intent to Distribute Schedule II narcotics on October 30, 2018 and was sentenced on April 4, 2019 to 30 months in prison.

28. Based on my experience and training, and the experience and training of the other investigating agents, I know that:

  a. Individuals engaged in unlawful narcotics trafficking often keep contacts, communication, incriminating photographs of narcotics, firearms, and other contraband, as well as incriminating photographs of co-conspirators or other individuals involved in narcotics trafficking, on their cell phones, computers, and other electronic storage devices;

  b. Individuals engaged in unlawful narcotics/firearms trafficking often store telephone numbers of associates and other co-conspirators, text messages, and voice mails in their cell phones; and

  c. Drug traffickers often use multiple cellular devices to communicate with other individuals involved in illegal narcotics trafficking.

29. Based on the information contained herein, I submit there is probable cause to believe that PULLEY used his cell phones in support of drug trafficking and the robberies of multiple pharmacies in the Norfolk area. Devices 1, 2, and 3, are attributed to PULLEY because they were located inside his aforementioned residence where he resided alone.

30. The Devices specifically described in Paragraph 5 above are currently in the lawful possession of the Norfolk FBI Field Office described herein. The search of PULLEY's residence was undertaken pursuant to state search warrant, which was obtained before this case was accepted for federal prosecution. Based on my training and experience, I believe the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Items first came into the possession of the Norfolk police Department and the Norfolk FBI Field Office.

## VII. Conclusion

31. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Items, specifically described above as Device 1, Device 2, and Device 3, to seek the items described in Attachment A. Accordingly, I request that a warrant be issued authorizing me, with assistance from additional FBI agents and other personnel, to search the Subject Items for the items specified in Attachment A.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Phillip B. Gautney, Special Agent
Federal Bureau of Investigation

Read and reviewed:

/s/
Sherrie S. Capotosto
Assistant United States Attorney

SUBSCRIBED and SWORN to before me telephonically on this 30th day of June 2020 at Norfolk, Virginia.

UNITED STATES MAGISTRATE JUDGE
UNITED STATES MAGISTRATE JUDGE